NO. 07-03-0519-CV



IN THE COURT OF APPEALS


 

FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 13, 2004



______________________________




IN RE KRISTA E. GLOVER NELSON



_________________________________






Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 This is a mandamus proceeding by which Krista Glover Nelson, relator, requests a
writ directing the Honorable Steven R. Emmert, Judge of the 31st District Court of Wheeler
County, to vacate his order in Cause No. 11,189 that denied relator's petition for writ of
habeas corpus concerning her minor daughter. We will deny relator's petition for writ of
mandamus.

 Relator and real party in interest Jeremiah R. Glover (1) were divorced by the 31st
District Court on April 25, 2003, by a final decree of divorce that named them as joint
managing conservators of their daughter Reagan Dale Glover, age three. The decree gave
relator the right to establish the primary residence of the child, and gave Jeremiah the right
to possession of the child during specific periods under a standard possession order. 

 Relator's petition for a writ of habeas corpus was filed September 9, 2003, asserting
that Jeremiah was illegally restraining the child and asking that she be returned to relator.
The same day, Jeremiah filed a motion entitled Motion for Emergency Possession Order
and Temporary Restraining Order in Suit Affecting the Parent-Child Relationship, asking
the trial court for relief that included temporary orders for the child's safety and a temporary
restraining order against relator. The motion alleged that the Child Protective Services
Division of the Texas Department of Protective and Regulatory Services (hereafter referred
to as CPS) had determined to remove Reagan from relator's home in Yoakum County
because of an allegation of molestation or abuse, but that CPS intended to place her with
someone other than Jeremiah, and further stated that Jeremiah had taken the child and
returned her to Wheeler County. The trial court heard both relator's habeas corpus petition
and Jeremiah's motion on September 23, 2003.

 Testimony at the September 23 hearing revealed that the allegations of molestation
or abuse against relator and her husband had been made by Jeremiah and his wife Bree,
who were residing in Tarrant County. Bree testified that Reagan made a statement to her
on September 5, while she and Reagan were in the car during a period of Jeremiah's
weekend possession. Bree testified: "She [Reagan] said that Garrett only touches her
hiney when he licks it." Garrett Nelson is relator's husband. After Bree reported the
statement to Jeremiah, they took Reagan to a Fort Worth hospital for examination. On the
advice of Fort Worth CPS representatives, they contacted law enforcement authorities in
Yoakum County and, on September 7, took Reagan with them to Yoakum County, where
they met with a deputy sheriff and with Kim Pendleton, a CPS worker from Lubbock. Ms.
Pendleton interviewed Reagan and made an audiotape of that interview. On September
8, a forensic interviewer conducted an interview of Reagan arranged by CPS and attended
also by Kathie Duenes, a CPS investigator. That interview was videotaped. Evidence
indicated that during both interviews, Reagan made statements concerning touches and
licks to her buttocks or genitals by her mother and Garrett. After the forensic interview, and
on the advice of his lawyer, Jeremiah took the child to Wheeler County. 

 CPS also arranged for relator and her husband Garrett to be interviewed by Dr.
Peggy Skinner, a professional counselor, who met with them on September 16. Dr.
Skinner also reviewed the video of the forensic interview of Reagan. Dr. Skinner produced
a written report, which was admitted at the hearing. The report noted that Reagan's
removal to Wheeler County interrupted the investigation of the allegations of her sexual
abuse, and listed several areas of concern that needed further investigation. The report
included concerns that the allegations were part of an ongoing dispute over custody of
Reagan and concerns, based on statements Reagan made during the forensic interview,
that the child was being coached. The report concluded that the case was complex but,
favorable to relator, also concluded that Reagan should be returned to her mother's
possession during completion of the investigation. 

 Kathie Duenes also testified at the September 23 hearing. Ms. Duenes testified that
CPS had not completed its investigation into the alleged abuse, and was not then ready
to make a determination concerning the allegations. She testified, though, that she and the
other CPS staff members involved in the case, in consultation with Dr. Skinner, had
concluded it was in Reagan's best interest for relator to have possession of the child
pending completion of the investigation. She stated that she had no reason to believe the
child would be in any immediate danger if she were placed back in the home of her mother
and stepfather. On cross-examination, Ms. Duenes testified that, as a part of the CPS
investigation, a psychological evaluation of the Glovers, like that made of the Nelsons by
Dr. Skinner, was desirable. 

 The trial court also heard testimony from relator and Garrett Nelson, both of whom
denied any inappropriate contact with Reagan, and from Jeremiah Glover. At the
conclusion of the hearing, the court announced its rulings denying relator's petition for a
writ of habeas corpus, finding that there was a serious immediate question concerning the
welfare of the child and ordering that Reagan remain with Jeremiah temporarily pending
completion of the investigation. The trial court's written order, containing the finding
pursuant to section 157.374 of the Family Code regarding the serious immediate question
concerning Reagan's welfare, was signed October 14. Tex. Fam. Code Ann. § 157.374
(Vernon 2002).

 Under Subchapter H of Chapter 157 of the Family Code, when the right to
possession of a child is governed by a valid court order, that right may be enforced by
habeas corpus. Tex. Fam. Code Ann. §§ 157.371-.376; Schoenfeld v. Onion, 647 S.W.
2d 954 (Tex. 1983) (per curiam); Strobel v. Thurman, 565 S.W. 2d 238 (Tex. 1978). The
party opposing habeas relief may not use that proceeding to relitigate the terms of the
court's order on possession, and the issuance of the writ of habeas corpus is to be
"automatic, immediate, and ministerial, based upon proof of the bare legal right to
possession." Schoenfeld, 647 S.W. 2d at 955. The rule is not without exception, though,
and one of the exceptions is provided by the court's authority under section 157.374 to
enter an appropriate temporary order when the court makes a written finding that there
exists a serious immediate question concerning the welfare of the child. Strobel, 565 S.W.
2d at 239 (citing predecessor Family Code section 14.10(c)). Case law has held that there
is a "serious immediate question" concerning a child's welfare when the child is in imminent
danger of physical or emotional harm, requiring immediate action to protect the child.
McElreath v. Stewart, 545 S.W.2d 955, 958-59 (Tex. 1977); Rocha v. Schuble, 809 S.W.2d
681, 682-83 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding).

 A trial court's denial of a writ of habeas corpus sought under Subchapter H may be
challenged by mandamus. See Schoenfeld, 647 S.W.2d at 956. Under the established
standards for the issuance of a writ of mandamus, the writ issues to correct a clear abuse
of discretion or the violation of a duty imposed by law. Canadian Helicopters Ltd. v. Wittig,
876 S.W.2d 304, 305 (Tex. 1994). A court abuses its discretion when it acts unreasonably,
arbitrarily, or without reference to any guiding rules and principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 

 In its resolution of factual issues, a court abuses its discretion if it rules without
supporting evidence, see Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998), or if it rules
contrary to evidence on which the court could reasonably have reached only one
conclusion. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992); see GTE
Communication Sys. Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993). A court also may
abuse its discretion by issuing an order that is beyond the court's authority. McElreath, 545
S.W.2d at 958-59; Klein v. Cain, 676 S.W.2d 165, 170 (Tex.App.-Amarillo 1984, orig.
proceeding). 

 Relator argues that the trial court had before it no evidence of any immediate threat
of physical or emotional harm to Reagan. In support of her argument, relator points to the
conclusions reached by Dr. Skinner and CPS favoring Reagan's return to her mother
pending completion of the CPS investigation. Relator's argument ignores, though, Bree's
unchallenged testimony of Reagan's statement about "licks" and the evidence of Reagan's
similar statements during the CPS interviews. The evidence before the court included
speculation about what Reagan may have meant by the statements, including suggestions
that she may have been using the term to refer to spankings, or to bodily touching
occurring in the normal course of care of the child. But the evidence was not such as to
mandate only one reasonable conclusion as to what the three-year-old was referring when
she uttered the statements. Given their worst interpretation, the statements clearly would
support a conclusion that Reagan's presence in the Nelson home subjected her to the
threat of harm, emotional if not physical.

 Relator also points out what she sees as an inconsistency between the trial court's
finding a serious immediate question about Reagan's welfare and the terms of the court's
temporary order permitting her unsupervised possession by relator. Assuming relator is
correct that the two are inconsistent, the inconsistency does not suggest that the court's
finding resulted from an abuse of discretion; at most, it would bring into question the
appropriateness of the terms of the court's temporary order. 

 A court's authority to set temporary orders for immediate protection of a child is not
limitless, and the temporary order under section 157.374 should not be a final adjudication
of custody. In re Lau, 89 S.W.3d 757, 759 (Tex.App.-Houston [1st Dist.] 2002, orig.
proceeding); Young v. Martinez, 685 S.W.2d 361, 363 (Tex.App.-San Antonio 1984, orig.
proceeding). Kathie Duenes testified that the CPS investigation was incomplete. Dr.
Skinner's report also called for more information. The trial court's October 14 order states
the trial court's intention to enter an additional order concerning evaluation of the child and
related matters, and states that the temporary orders are to remain in effect until
conclusion of the investigation and evaluation of the pending allegations, as determined
by further order of the court. The record before us does not indicate that the trial court has
entered additional orders, but relator's petition does not suggest that those terms of the
court's order exceeded the court's authority or otherwise involved an abuse of the court's
discretion.

 Concluding that the trial court did not abuse its discretion by making the finding that
there existed a serious immediate question about the child's welfare, we deny relator's
petition for writ of mandamus.

 Per Curiam 

1. For clarity, we will hereafter refer to Krista Glover Nelson as relator, and will refer
to the real party in interest, and to the spouses of both, by their given names.


te, 851 S.W.2d 871, 873-74 (Tex.Crim.App.1993). This standard is met when the
greater weight of the credible evidence creates a reasonable belief that the defendant
violated a condition of his or her community supervision as the State alleged. Martin v.
State, 623 S.W.2d 391, 393 n.5 (Tex.Crim.App. 1981) (panel op.); Allbright v. State, 13
S.W.3d 817, 819 (Tex.App.–Fort Worth 2000, pet. ref'd). Proof of one violation alone is
sufficient to support revocation. Cardona, 665 S.W.2d at 493.
          In a community supervision revocation hearing, the trial judge is the sole trier of fact
and determines the credibility of the witnesses and the weight to be given their testimony.
Allbright, 13 S.W.3d at 818-19. We review the evidence in the light most favorable to the
court's ruling.


 Cardona, 665 S.W.2d at 493; Allbright, 13 S.W.3d at 819.
          Appellant’s community supervision officer testified appellant committed another
offense against the State and “did not let [her] know within the specified time frame she
had committed an offense and been arrested. And also she is –was $80 delinquent on
that case.” On cross-examination, the officer admitted she knew appellant was arrested
on January 8, 2009 and she did not know if appellant would be allowed to call her within
that first 24 hours. She “assume[d] they would allow it.” She also admitted she was aware
appellant had not worked while she was on probation because of medical reasons. 
Instead, appellant’s family members had been paying her fees, at least until December
2008 and January 2009. The State's burden is to prove by a preponderance of the
evidence that appellant was able to pay and did not pay as ordered by the trial court. See
Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp.2008); Hernandez v. State,
No. 05-08-00216-CR, 2009 WL 201201, *2 (Tex.App.–Dallas Jan. 29, 2009, no pet.)
(mem. op. not designated for publication). The trial court could have inferred from the
probation officer’s testimony that because appellant had paid her fees in the past through
resources provided by family members and no evidence showed those resources no longer
were available, she had the ability to pay but did not pay as ordered by the court. See Tex.
Code Crim. Proc. Ann. art. 42.037(h) (Vernon 2006).
          A police officer with the DEA Task Force also testified at the revocation hearing. He
testified that on January 8, 2009, he executed a search warrant at a Dimmitt, Texas
address. When he entered the residence to execute the search warrant, appellant, her
husband and two other individuals were present. Appellant was in the living room of the
home when officers entered. The officer testified that appellant lived in the house and
slept in her own bedroom there. In that bedroom, the officers found cocaine and some
crystal methamphetamine in a black fanny pack on the bed. The drugs were packaged
individually in Ziplock baggies, “packaged for sale.” Each baggie contained about half a
gram each of narcotics, for a total of between eight and nine gross grams of
methamphetamine and about 5.6 gross grams of cocaine. A field test was conducted on
the drugs. The drugs tested positive for methamphetamine and cocaine respectively.


 
Approximately $2000 cash was also found in the black fanny back. Narcotics were also
located in appellant’s husband’s end table drawer in the bedroom, in appellant’s husband’s
wallet, and in the freezer in the kitchen. By the conclusion of the search, officers located
about $12,000 cash, 11.8 gross grams of crystal methamphetamine, and 5.6 gross grams
of cocaine.
          Defense counsel cross-examined the two State’s witnesses. No defense witnesses
were presented and appellant did not testify.
          Appellant argues the State failed to satisfy its burden of proving she committed a
new possession offense because the State failed to link her to the controlled substances
that resulted in her January 8 arrest. To prove appellant violated her community
supervision by possessing, with intent to deliver, a controlled substance, the State had to
prove by a preponderance of the evidence that: 1) the accused exercised care, custody,
control or management over the contraband; 2) the accused knew the matter possessed
was contraband; and 3) the accused had the intent to distribute. See Martin v. State, 753
S.W.2d 384, 386 (Tex.Crim.App.1988); see also Tex. Penal Code Ann. § 1.07(a)(39)
(Vernon 2003); Tex. Health & Safety Code Ann. § 481.112(d)(Vernon 2003). Possession
need not be exclusive and evidence which shows that an accused jointly possessed the
contraband with another is sufficient. Whitworth v. State, 808 S.W.2d 566, 569
(Tex.App.–Austin 1991, pet. ref'd). 
          When an accused is not in exclusive possession and control of the place where the
contraband was found, it cannot be concluded or presumed that the accused had
knowledge of or control over the contraband unless there are additional independent facts
and circumstances connecting or linking the accused to the knowing possession of
contraband. Poindexter v. State, 153 S.W.3d 402, 406 (Tex.Crim.App.2005); Brown v.
State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995); Hargrove v. State, 211 S.W.3d 379,
385 (Tex.App.–San Antonio 2006, pet. ref'd). In determining the legal sufficiency of
evidence in a knowing possession of contraband case, there must be evidence of those
facts or circumstances to adequately justify the conclusion that the accused knowingly
possessed the contraband. Evans v. State, 202 S.W.3d 158, 162 n.9 (Tex.Crim.App.
2006); Washington v. State, 215 S.W.3d 551, 554-55 (Tex.App.–Texarkana 2007, no pet.).
Presence and proximity when combined with other evidence, direct or circumstantial, may
be sufficient to establish a knowing possession of contraband. Evans, 202 S.W.3d at 162;
Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex.App.–Corpus Christi 2002, no pet.). See
also Byard v. State, No. 07-07-0052-CR, 2009 WL 386945 (Tex.App.–Amarillo Feb. 13,
2009, no pet.) (mem. op., not designated for publication). 
          Reiterated, the burden of proof in a community supervision revocation is a
preponderance of the evidence. Moreno v. State, 22 S.W.3d 482, 488 (Tex.Crim.App.
1999). Revocation of community supervision does not require a conviction which
necessitates proof beyond a reasonable doubt. Instead, only a reasonable belief that
appellant committed the alleged offense is necessary. Id. We find that when the limited
record before us is viewed in the light most favorable to the court's ruling, the evidence
preponderates in favor of the State's position that appellant knowingly possessed the
drugs. First, appellant resided at the home where the contraband was discovered. 
Second, the bulk of the methamphetamine and cocaine was found in a black fanny pack
on the bed in the bedroom identified by a police officer as appellant’s bedroom. Third,
$2000 in cash was found in the same place. Fourth, additional drugs and cash were found
in common areas of the home, namely the kitchen. 
          The State also elicited testimony from the DEA Task Force officer that individually
wrapping methamphetamine and cocaine in half gram amounts is “packaged for sale.” 
See Jordan v. State, 139 S.W.3d 723, 726-27 (Tex.App.–Fort Worth 2004, no pet.)
(holding that intent to deliver may be inferred from the quantity of drugs possessed, the
manner in which they are packaged, and expert testimony indicating an intent to deliver). 
The bulk of the drugs, “around eight gross grams” of methamphetamine and “[f]ive point
six gross grams of cocaine[,]” were found in the black fanny pack located on the bed in
appellant’s bedroom. The officer also testified officers located $2,000 in the black fanny
pack on the bed in appellant’s bedroom and located a total of $12,000 during the search
of the house. The trial court could have inferred from this evidence that appellant had the
intent to distribute the narcotics, thereby finding the State proved, by a preponderance of
the evidence, that appellant committed the offense of knowingly possessing, with intent to
deliver, a controlled substance, namely methamphetamine and cocaine, in an amount of
four grams or more but less than 200 grams.
          The State presented evidence of three violations of the terms of community
supervision. As noted, proof of one violation alone is sufficient to support revocation.
Cardona, 665 S.W.2d at 493. The trial court did not abuse its discretion in revoking
appellant's community supervision. Id. See also Weavers v. State, No. 07-06-0260-CR,
2007 WL 2891068 (Tex.App.–Amarillo October 4, 2007, no pet.) (mem. op., not designated
for publication). See also Cherry, 215 S.W.3d at 919 (probation officer's testimony was
sufficient evidence on which to find a violation of a term of appellant's community
supervision). We overrule appellant’s sole issue and affirm the trial court’s judgments
revoking community supervision.
 
                                                                           James T. Campbell

                                                                                     Justice













Do not publish.